## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |  |
|---|---|---|
| The UNITED STATES OF AMERICA for the use and benefit of Branscome Inc. *doing business as* BRANSCOME EASTERN SHORE, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 2:15-cv-127 |
| The HANOVER INSURANCE COMPANY and DOUGLAS P. FLEMING, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Branscome Eastern Shore's ("Branscome") Motion to Enforce Settlement Agreement filed on September 17, 2015. ECF No. 24. This matter was referred to the undersigned United States Magistrate Judge pursuant to a Referral Order from the Chief United States District Judge. ECF No. 36; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. For the following reasons, the undersigned **RECOMMENDS** that the Court **DENY** Branscome's Motion to Enforce Settlement Agreement, ECF No. 24.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2015, Branscome filed a Complaint against Defendants Douglas P. Fleming, LLC ("Fleming") and the Hanover Insurance Company ("Hanover"). ECF No. 1. The Complaint asserted that Branscome was due payment on a bond posted pursuant to the Miller Act, 30 U.S.C. § 3131, and also included pendent claims against Fleming for breach of

1

subcontract, breach of supplemental agreement, and *quantum meruit*. *Id*. The parties'
relationship began in May of 2014, when Fleming entered into a contract with the United States
Government for projects in the Chincoteague National Wildlife Refuge and the Assateague
Island National Seashore. *Id*. ¶ 6. Pursuant to the Miller Act, Hanover acted as surety,
furnishing the Government with a bond in the amount of $218,011.80. *Id*. ¶ 7. On June 4, 2014,
Branscome and Fleming entered into a contractor-subcontract agreement, whereby Branscome
would supply Fleming with labor and materials. *Id*. ¶ 8. Branscome fully performed under the
subcontract on August 26, 2014, and sent Fleming two invoices totaling $65,266.29. *Id*. ¶¶ 9-11.
Branscome has not been paid for any of the labor or materials provided under the subcontract
and asserted payment due in the amount of "$65,266.29 plus interest due and owing at the rate of
1.5% per month and 18% interest per annum from July 30, 2014, the costs of this suit, and
attorneys' fees." *Id*. ¶ 11. On December 3, 2014, the parties entered into a supplemental
agreement, wherein Fleming agreed to pay the outstanding amount of $65,266.29 plus all
accrued interest due and owing Branscome by December 31, 2014. *Id*. 12. Fleming has not
paid. *Id*. ¶ 13.

On May 19, 2015, Fleming filed an Answer to Branscome's Complaint. ECF No. 7.
Hanover did not respond, so on May 18, 2015, Branscome filed a Request for Entry of Default
against Hanover for failing to file a responsive pleading. ECF No. 6. On May 20, 2015, the
court clerk entered default as to Hanover. That same day, Hanover filed a Motion to Set Aside
Default. ECF No. 9. A hearing on the motion occurred on August 5, 2015 in front of Chief
United States District Judge Smith, ECF No. 19,[1] whereat Branscome was represented by
Attorney Hunter Old ("Mr. Old"), Fleming was represented by Attorney Mary Morgan ("Ms.

---

[1] The hearing transcript can be found at ECF No. 30. The Court will cite references to the hearing transcript as "Hr'g
Tr."

Morgan"), and Hanover was represented by Attorney Adam Tuckman ("Mr. Tuckman").  At the hearing, the parties indicated that they had "reached a settlement in principal of the entire matter" and the Court agreed to postpone any ruling on the Motion to Set Aside Default as the parties indicated that part of the settlement would include a Fed. R. Civ. P. 41(a) notice of stipulation of dismissal, which would take care of the motion.  Hr'g Tr. at 3.  The parties advised that they had agreed to take the settlement in principal back to their clients, reduce it to writing, and then present a dismissal order to the Court under Rule 41(a).  *Id.* at 5.  Chief Judge Smith then questioned the parties' intentions, "The Court would enter the voluntary dismissal of the parties, then after which if something went wrong, you would have your written settlement agreements, and you would have to file a separate suit to enforce the settlement?"  *Id.*  Counsel for Branscome responded in the affirmative.  *Id.*

After the hearing on August 5, 2015, Mr. Old emailed Ms. Morgan and Mr. Tuckman, laying out the "general terms of the settlement."  ECF No. 34 attach. 1.  In the bottom of the email, he stated: "[Ms. Morgan] has agreed to draft a settlement agreement before she leaves on Friday for vacation. [Mr. Tuckman] is working on language on Hanover's behalf."  *Id.*  Over the next few weeks Mr. Old and Ms. Morgan emailed back and forth (cc'ing Mr. Tuckman on the emails), flushing out the terms of the purported settlement and exchanging draft agreements.  *See* ECF No. 39 attach. 1.

On August 24, 2015, the parties filed a Joint Motion to Set Aside Default Judgement, ECF No. 20, to which Chief Judge Smith entered an Order thereto granting the motion on August 25, 2015, ECF No. 21.  Some short while after the hearing, it appears that the parties' agreement over some material terms began to break down.  *See, e.g.*, ECF No. 39 attach 1 at 4 (Branscome's attorney representing that a confidentiality agreement is necessary:  "No

3

confidentiality agreement is a deal breaker for Branscome."); and (Fleming's attorney representing that her client will not sign an agreement with a mutual release provision: "With regard to the addition of the 'Mutual Release' of Claims, and 1b language, this is a deal breaker. . . . Doug [Fleming] will not execute a mutual release, end of story, and I will stand behind him."). On September 17, 2015, Branscome filed the present Motion to Enforce Settlement Agreement, ECF No. 24, indicating that Fleming was unwilling to agree to the purported settlement agreement, ECF No. 25 at 2. On October 1, 2015, Hanover filed a Memorandum in Opposition, ECF No. 34, to which Branscome filed a Reply on October 8, 2015, ECF No. 35. Fleming filed its Memorandum in Opposition on November 3, 2015. ECF No. 39.

A hearing on the Motion to Enforce Settlement Agreement was held before the undersigned on November 16, 2014, ECF No. 42, whereat Mr. Old again represented Branscome and Mr. Tuckman represented Hanover. However, Attorney James Faughnan ("Mr. Faughnan") represented Fleming, as Ms. Morgan's motion to withdraw her appearance on behalf of Fleming was granted by the Court on October 13, 2015.[2] ECF No. 36. The Court took the Motion to Enforce Settlement Agreement under advisement to prepare this Report and Recommendation.

## II. STANDARD OF REVIEW

When faced with a motion to enforce a settlement agreement, two questions are before the Court: (1) whether the parties reached a complete agreement and (2) whether the Court can determine the terms and conditions of the agreement. *See Campbell v. Adkisson, Sherbert & Associates*, 546 F. App'x 146, 152 (4th Cir. 2013) (citing *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002)); *Patel v. Barot*, 15 F. Supp. 3d 648, 653 (E.D. Va. 2014). The burden of proof is on the party motioning the court to enforce the settlement agreement. *Saza,*

---

[2] According to her Motion to Withdraw, Ms. Morgan sought leave to withdraw from the case on the grounds that she might be a witness. ECF Nos. 27, 28. Ms. Morgan represented Fleming during settlement negotiations and was a party to the majority of documents before the Court.

4

*Inc. v. Zota*, No. 3:11-CV-363, 2012 WL 527370, at *5 (E.D. Va. Feb. 16, 2012) (citing

*Ozyagcila v. Davis*, 701 F.2d 306, 308 (4th Cir.1983)). The motioning party must prove the

existence of an agreement as well as the material terms therein. *Id.* That burden falls on

Branscome in this case.

### III. ANALYSIS

A. There is Insufficient Evidence to Prove There Was a Complete Agreement as to All Three
Parties.

The first step before the Court is to determine whether the parties have in fact reached a

complete agreement (*i.e.* whether they agreed to settle the case). Virginia contract law controls

in determining whether a settlement agreement exists. *Power Servs., Inc. v. MCI Constructors,*

*Inc.*, 3 F. App'x 190, 192 (4th Cir. 2001) ("Settlement agreements are treated as contracts subject

to the general principles of contract interpretation."). "The essential elements of a contract are

an offer, acceptance, and consideration." *Howell v. Kelly Servs., Inc.*, No. 1:12-CV-821, 2015

WL 2070348, at *2 (E.D. Va. May 1, 2015). To have a *complete* agreement, as required here,

there must be a clear and definite offer that is expressly accepted by the other party or where it is

clear the other party accepts based on his objective manifestations. *Id.* at *3. Offers to settle a

case can generally be accepted by the opposing party's attorney, as attorneys have inherent

authority to settle litigation on behalf of their clients. *Id.* (citing *Moore v. Beaufort Cnty., N.C.*,

936 F.2d 159, 163-63 (4th Cir. 1991)). *But see Hensley*, 277 F.3d at 541 n.1 (citing *Auvil v.*

*Grafton Homes, Inc.*, 92 F.3d 226, 229-30 (4th Cir. 1996)) ("Absent express agreement between

an attorney and client, the attorney's implied authority is limited to negotiating a settlement, not

agreeing to it.").

Branscome argued that "[t]he agreement among the parties was complete at the hearing."

ECF No. 35 at 1 (referring to the August 5, 2015 hearing in front of Chief Judge Smith). It is

unclear what exactly the initial offer or demand was because the parties did not provide

documentation regarding the offer, but prior to the hearing on August 4, 2015, Ms. Morgan,

original counsel for Defendant Fleming, responded in an email to Mr. Old and stated:

> In response to your demand of August 3, 2015, Fleming accepts the offer as outlined,
> including the attorney's fees and interest in equal installments, provided that the first
> payment start on September 15, 2015. This settlement is also contingent upon
> Branscome cooperating with [Fleming] during the pendency of the [Civilian Board of
> Contract Appeals ("CBCA")] matter against the Department of Transportation and
> production of the documents that will be requested by [Fleming]'s counsel, Greg Arcaro.
> The case pending above will need to be dismissed pursuant to Rule 41. The case may be
> dismissed without prejudice so that you have a remedy in the event that [Fleming] fails to
> make payment.

ECF No. 25 attach 1. Based on the language used in this email, acceptance occurred from Ms.

Morgan on behalf of Fleming, with the exception of Ms. Morgan's contingent language that the

settlement would be contingent upon Branscome cooperating with Fleming during his federal

contract appeal. *See Howell*, 2015 WL 2070348, at *4 (noting that "a valid contract was formed

when defendants' counsel responded via email that they accepted plaintiff's 'settlement

demand'"). Further, the Court notes that Ms. Morgan drafted a settlement agreement, ECF No.

25 attach. 2, after the hearing, another indication that Branscome and Fleming had a binding

agreement. *See Power Servs.*, 36 F. App'x at 126 (noting that the parties did not just have a

document stating "this is an offer to settle" or "the parties have agreed in principal," but rather

the attorneys drafted a settlement memorandum clearly stating the parties "agreed to settle").

However, there are three parties to this litigation, and there was no express acceptance of

Branscome's offer from Hanover's attorney, Mr. Tuckman. In cases where there are three

parties, all with obligations in the settlement contract—such as with sureties or guarantors—the

surety must accept the agreement as well unless there is explicit authorization whereby the surety

tenders settlement authority to another. In *Power Servs.*, the Fourth Circuit affirmed a district

6

court's factual determination that a surety gave the president of a general contracting company the authority to settle a payment dispute with a subcontractor on behalf of the surety in a matter in which the surety faced a reimbursement obligation. *Id.* at 124. In the present matter, there is no indication that Hanover tendered authority to Defendant Fleming or Ms. Morgan to settle without its acknowledgement and concurrence.

Branscome argued that Hanover accepted the agreement by silence, pointing to the Second Restatement of Contracts, which permits acceptance by silence in two circumstances: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intent that silence may operate as acceptance. Restatement (Second) of Contracts § 69 (Am. Law Inst. 1981). However, acceptance by silence is an exception and not the general rule. *Klein v. Verizon Commc'ns, Inc.*, 920 F. Supp. 2d 670, 680 (E.D. Va. 2013), *appeal dismissed* (May 8, 2013) ("Silence or inaction upon receipt of an offer may constitute acceptance, but this is the exception and not the general rule."). In cases where courts have found that silent acceptance occurred, there was a clear understanding of the terms in which each party were to be bound and performance or acceptance of offered benefits occured. *See, eg. Galloway Corp. v. S.B. Ballard Const. Co.*, 250 Va. 493, 505, 464 S.E.2d 349, 356 (1995) (finding that when one party "undertook to perform the contract according to its terms, an acceptance by performance resulted" even though the parties never signed a formal contract); *Hercules Powder Co. v. Brookfield*, 189 Va. 531, 541, 53 S.E.2d 804, 808 (1949) ("Ample authority sustains the view that such a promise amounts to an offer, which, if accepted by performance of the service, fulfills the legal requirements of a contract.").

Branscome has neither established that Hanover took any offered benefits pursuant to the purported settlement agreement, nor that Branscome relied on Hanover's manifestation of intent

that silence would operate as acceptance.  With respect to the former proposition, Brancome identified no benefits Hanover gained by remaining silent as Branscome and Fleming hashed out the details of the proposed settlement.  With respect to the second proposition, Branscome has not demonstrated how it relied to its detriment on Hanover's silence.  Absent either showing, Hanover's silence does not equate to agreement.

Furthermore, Hanover's silence and inaction gives the Court no guidance as to what terms Hanover might have *assented* to.  A court is to "ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." *Phillips v. Mazyck*, 273 Va. 630, 636, 643 S.E.2d 172, 175 (2007).  Mr. Old and Ms. Morgan emailed back and forth on behalf of Branscome and Fleming to work out the terms essential to *their* agreement.  It cannot be said that Hanover, by its failure to respond, simply waived its right to have a say in the terms that would have bound it.  *See Schulze v. Kwik-Chek Realty Co.*, 212 Va. 111, 112, 181 S.E.2d 629, 630 (1971) (finding that "mere silence or inaction, in the absence of a duty to speak or act, does not operate to create a waiver or estoppel"); *Phillips*, 273 Va. at 638, 643 S.E.2d at 176 ("A party's silence, however, is insufficient to show its intention to be bound by the terms of a contract."); *cf. Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 494, 737 S.E.2d 544, 549 (2013) (finding a party's silence and acceptance of payment to be insufficient as a matter of law to demonstrate that party agreed to a modification of the original contract).  Thus, it cannot be said with any certainty that Mr. Tuckman objectively manifested an intent to settle on identifiable terms on behalf of Hanover, and this Court cannot find, under these circumstances, that his mere acquiescence or silence is a presumption that Hanover was in agreement.

8

B. Branscome Offered Insufficient Evidence Proving Enforceable Terms and Conditions as to Hanover.

In addition to not being able to find that a complete agreement was reached that included Hanover, this Court also cannot find that there are terms and conditions that are enforceable as to Hanover.  When considering whether there are enforceable terms and conditions, the Court "must determine that there are sufficient facts to resolve any disputes over material terms, and must find that all material agreed-upon terms are sufficiently definite to enable the court to give them an exact meaning." *Intersections, Inc. v. Loomis*, No. 1:09CV597 LMB TCB, 2010 WL 4623877, at *2 (E.D. Va. Nov. 3, 2010).  "The Court has only the power to enforce an agreement if there is an agreement on all the material terms." *Zota*, 2012 WL 527370, at *7; *Dominion Sav. Bank, FSB v. Costello*, 257 Va. 413, 417, 512 S.E.2d 564, 566 (1999) (citing *Ross v. Craw*, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986) ("It is well-settled in contract law that 'where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.'").  Further, there must be a "meeting of the minds" in regards to *all* material terms. *See Loomis*, 2010 U.S. Dist. LEXIS 118080, at *7 ("A settlement agreement is a matter of contract, and without a meeting of the minds as to all material terms, there can be no enforceable settlement agreement as a matter of law.").

Branscome argued the proposed settlement terms as of the date of the complete settlement on August 5, 2015 were as follows:

1. A settlement amount of $81,142.49 would be paid by Fleming to Branscome in six installments, beginning on September 15, 2015;

2. Should Fleming default on its payments, Hanover would make payment to Branscome of the outstanding balance;

3. In return, Branscome would cooperate in Fleming's claim against the DOT and would produce complete documentation supporting its bid and the work

9

performed pursuant to its subcontracts with Fleming, with production of these documents being done pursuant to a Confidentiality Agreement; and

4. Branscome would dismiss its claims in this litigation.

ECF No. 25 at 7.[3] The Defendants, both Hanover and Fleming, argued that these terms were not the *complete* agreement and that the parties intended to have a final writing, the completion of a confidentiality agreement, and an agreement as to a release before coming to a formal settlement. *See* ECF No. 39 at 4, 9-10. Specifically, in Hanover's Memorandum in Opposition, Hanover argued that "the terms that Branscome claims in its Motion can be imposed upon Hanover and Fleming are simply too general and lacking in substance for the parties to possibly implement and/or for the Court to enforce." ECF No. 34 at 8. Essentially, Hanover asserted that the proposed terms are too vague to give any guidance as to Hanover's obligations; hence Hanover would not have assented to any such uncertainties. *Id.* at 7-8. For instance, Hanover argued that Branscome's term regarding Hanover's obligation to pay if Fleming defaults, "lack[ed] any reference to the necessary conditions that would constitute a 'default' and protect Hanover from having to perform any secondary obligation to make payment to Branscome when no such obligation should be triggered." *Id.* at 8. Second, Hanover argued that "Branscome disingenuously refer[ed] to a release as an ancillary term of the agreement. . . . Hanover and [Fleming] would not have entered into any settlement without receiving a written release in return." *Id.* at 9.

As mentioned, Branscome has the burden of proving that the material terms are enforceable as to all parties; and while Branscome presented substantial evidence with regard to

---

[3] The four material terms which Mr. Old delineated in Branscome's Memorandum in Support of Motion to Enforce Settlement Agreement are the same as those spelled out in his August 5, 2015 email. *Compare* ECF No. 25 at 7, *with* ECF No. 34 attach 1.

the agreed-upon terms between Branscome and Fleming, Branscome provided scant evidence

with respect to any terms between Branscome and Hanover. Specifically, Branscome presented

only the fact that Mr. Tuckman, at the August 5 hearing, affirmed to Chief Judge Smith that there

was a settlement. ECF No. 25 at 6. However, Mr. Tuckman's statement at the hearing does not

indicate what terms Hanover agreed to be bound by. Mr. Tuckman's relevant statements at the

hearing were as follows:

> MR. TUCKMAN: Before I address the motion, I wanted to alert the Court that literally
> this morning on the proverbial courtroom steps, the parties have reached a settlement in
> principal of the entire matter. Obviously, with the timing, we have not had an opportunity
> to reduce the agreement to writing. All intentions of the parties is to do so rather quickly.
> We were hopeful to have a little bit of time to do that before the motion would be
> decided, and plaintiff indicated at the time we get the agreement set forth, that a
> stipulation of dismissal will be entered.
> . . .
>
> THE COURT: I understand. So, in other words, you all are negotiating a
> settlement agreement. Do you feel as the attorneys you've agreed?
>
> MS. MORGAN: Yes, Your Honor.
>
> MR. TUCKMAN: Yes, Your Honor.
>
> THE COURT: What you are doing now is taking this back to your clients, you
> are reducing it to writing, and then you would have your settlement agreement, at
> which point you would present a dismissal order under Rule 41(a) to the Court.
> The Court would enter the voluntary dismissal of the parties, then after which if
> something went wrong, you would have your written settlement agreements, and
> you would have to file a separate suit to enforce the settlement?
>
> MR. OLD: Correct.

Hr'g Tr. at 2-3, 5.

The above exchange is not an objective manifestation by Hanover to be bound by any

certain obligations and terms. Mr. Tuckman did not comment on the proposed terms and draft

settlement agreements that were shuffled back and forth between Mr. Old and Ms. Morgan. *See*

ECF No. 25 attach. 1. Under Virginia law, mutual asset and a meeting of the minds is required

by all "minds" involved, *cf. Moorman v. Blackstock, Inc.*, 276 Va. 64, 75, 661 S.E.2d 404, 409 (2008) (quotations omitted) ("Mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts. Until the parties have a distinct intention common to both . . . there is a lack of mutual assent and, therefore, no contract."), and to suggest that Hanover assented to certain obligations, "this Court necessarily would have to add words to the settlement agreement. . . . The intention of the parties must be determined from what they actually say and not from what it may be supposed they intended to say.'" *MW Builders of Kansas, Inc. v. VT Properties, Inc.*, 246 Va. 255, 259, 435 S.E.2d 145, 147 (1993) (citing *Carter v. Carter*, 202 Va. 892, 896, 121 S.E.2d 482, 485 (1961)); *Guill*, 1995 WL 1055784, at *1-2 (refusing to enforce either parties' proposed settlement because it appeared there was no meeting of the minds as to whether the settlement was intended to release both defendants or just one); *Moorman*, 276 Va. at 75, 661 S.E.2d at 409 (citing *Lucy v. Zehmer*, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954)) ("Mutual assent is determined 'exclusively from those expressions of [the parties'] intentions which are *communicated* between them.'") (emphasis in original).

The Court cannot find that there was an enforceable settlement because the Court would have to conclude that parties could have a meeting of the minds without any express objective manifestation to assent to specific terms by a silent party. While it certainly seems that Hanover was in agreement that it would pay Branscome if Fleming defaulted on the settlement agreement, no proffer was made as to what events must occur under the terms of the agreement in order to constitute a default. The conditions precedent to a finding of default is a material term in this case which the Court cannot supply. *See generally Dodge v. Trustees of Randolph–Macon Woman's Coll.*, 276 Va. 1, 5-6; 661 S.E. 2d 801, 803 (2008) (finding that, in order to be binding, the terms of any contract "must spell out the essential commitments and agreements with respect

thereto" and "obligate the contracting parties to matters that are definitely ascribed or ascertainable."). Absent any information on Hanover's agreement or understanding as to its intent to be bound and the circumstances under which it would be obligated to pay, the Court cannot determine which terms are enforceable as to Hanover, and to what extent they could be enforced. Therefore, Branscome did not meet its burden in that the evidence Branscome relied on does "not merely relate to the mechanics of fulfilling a binding agreement, . . . but rather constituted an effort by [Branscome] to impose an undisclosed condition upon the settlement as a whole to which [Hanover] had not consented. *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 348, 269 S.E.2d 838, 845-46 (1980).

## IV. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiffs' Motion to Enforce Settlement Agreement, ECF No. 24, be **DENIED.**

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which

13

objection is made.   The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 8, 2015